UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| KARL LEE COVINGTON, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>KARL L COVINGTON-BEY; KARL COVINGTON; KARL LEE COVINGTON; KARL L COVINGTON; CARL COVINGTON; and KARLA COBINGTON,<br><br>Defendants. | 4:26-CV-04078-RAL<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING |

Plaintiff Karl Lee Covington, Jr., filed a pro se lawsuit alleging a violation of the Fair Credit Reporting Act. Doc. 1. Covington also filed a motion for leave to proceed in forma pauperis and a motion to appoint counsel. Docs. 2, 3.

## I.    Motion for Leave to Proceed In Forma Pauperis

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Covington's financial affidavit, this Court finds that he has insufficient funds to pay the filing fee. Thus, Covington's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

## II.    1915 Screening

### A.    Factual Background

Covington brings claims for "identity theft-related fraud" and claims under the Fair Credit Reporting Act against the defendants, who are various "fictitious names" associated with Covington's personal information. Doc. 1 at 1–2. Covington was incarcerated "off and on" from March 22, 2021, to June 10, 2023. Id. at 3; Doc. 1-1 at 4–5. While Covington was incarcerated, "unauthorized entities highjacked [Covington's] business identity and 50% interest to establish a criminal cindicate [sic]." Doc. 1 at 3. Covington alleges that "[f]ictitious names were established on [his] consumer report to establish fraudulent tradelines[,]" and that he is now the "'alleged' 50% owner" of Covington-bey & Dawson Ivesting LLC, an LLC registered in North Carolina in July 2020. Id. According to Covington, "[t]here is no signature on any of the parenting company documents agreeing or giving authorizations to utilize [Covington's] names as the article of organization in the parenting company filings[.]" Id. The other 50% owner of this LLC, Annette Dawson, "continued to pay annual fees to keep the business entity open[,]" but Covington claims that "she intentionally failed to file annual reporst [sic] as required with the Secretary of State." Id. at 4. Covington asserts that this is evidence of illegal intent and constitutes "[f]raudulent maintenance and intentional nondisclosure[.]" Id.

Covington alleges that there has been a "[m]isapporpriation of digital identity[,]" and that "this criminal cindicate [sic] gained access to [his] personal data through multiple mobile devices [he] previously possessed. These devices were hacked and comprimised [sic] allowing unauthorized parties to attach their own devices and emails to [his] personal accounts." Id. at 3. As a result of these accounts being compromised and his devices being hacked, Covington asserts that "Defendants gained access to [his] emails, banking information and/bizzee/incfile

credentials[.]" Id. "This digital breach provided the defendants with private data necessary to maintain [his] business filings and by pass [sic] security protocol while [Covington] was incarcerated." Id. at 5. Further, the defendants "utilized these comprised [sic] accounts and lost devices to further conceal their identities, using [Covington's] established digital footprint to open fraudulent accounts and tradeline entities." Id.

As relief, Covington requests:

1. Judicial wind up and dissolution of highjacked company[,]
2. Quiet title and transfer of all misappropriated assets to [Covington's] name[,]
3. A nation wide asset freeze[,]
4. Order to change name to ensure theres [sic] no repeat opurtunity [sic] or offense to this magnatude [sic] [,]
5. Order the surrender of all unclaimed funds bank accounts, businesses, assets, stocks bonds, trusts, partnerships, etc [sic] to be turned over to [Covington], Lein and incumberance on all things within [Covington's] name until transferred over to him for liquidation.

Id. at 3. Covington also requests an unspecified amount of money damages. Id. at 6.

### B.   Legal Standard

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under § 1915(a), the court must then determine whether the complaint should be dismissed under § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[ ] to state a claim on which relief may be granted; or (iii) seek[ ] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam);

3

Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted).  Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions."  Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).  Civil rights complaints cannot be merely conclusory.  Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory."  Williams v. Willits, 853 F.2d 586, 588 (8th Cir. 1988) (citing Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974)).  A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).  If a complaint does not contain these bare essentials, dismissal is appropriate.  See Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted).  Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]"  550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553–63)).  Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'"  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Twombly, 550 U.S. at 556).

Case 4:26-cv-04078-RAL    Document 7    Filed 05/05/26    Page 5 of 10 PageID #: 76

### C.    Legal Analysis

#### 1.    Claims Under the Fair Credit Reporting Act

As this Court understands his complaint, Covington brings claims under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, based on incorrect information contained in his consumer reports. See, e.g., Doc. 1 at 3 (stating that "[f]ictitious names were established on [his] consumer report to establish fraudulent tradelines."). "The FCRA provides protection to consumers in relation to credit reporting by requiring the establishment of 'reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.'" Lewis v. Navient Sols., Inc., No. 4:13-CV-00826, 2015 WL 10936762, at \*4 (W.D. Mo. Jan. 22, 2015) (quoting 15 U.S.C. § 1681(b) (2014)), aff'd, 618 F. App'x 301 (8th Cir. 2015) (per curiam). Congress enacted the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007).

The FCRA imposes duties on three main groups: (1) consumer reporting agencies, (2) "'person[s]' who procure credit information from consumer reporting agencies[,]" and (3) "those who furnish information to consumer reporting agencies." Dep't of Agric. Rural Dev. Rural Housing Serv. v. Kirtz, 601 U.S. 42, 46 (2024). Here, Covington's complaint does not state claims against any one of these three groups covered by the FCRA—instead, he names as defendants the "fictitious names" that have been used on Covington's consumer report. Doc. 1 at 3; see also Doc. 1-1 at 10–11 (listing the names that appeared on Covington's consumer report).

Further, it is difficult to determine which provision of the FCRA Covington attempts to bring claims under. See generally Doc. 1. Most directly related to Convington's claims are the

5

provisions of 15 U.S.C. § 1681c-1, which set out specific policies and procedures regarding identity theft prevention. Section 1681c-1(a) provides that "*[u]pon the direct request of a consumer*, . . . who asserts in good faith a suspicion that the consumer has been or is about to become a victim of fraud or related crime, including identity theft, a consumer reporting agency described in section 1681a(p)[1] of this title that maintains a file on the consumer and has received appropriate proof of the identity of the requester shall[]" include a fraud alert in the file of the consumer and refer the information regarding the fraud alert to other consumer reporting agencies. 15 U.S.C. § 1681c-1(a)(1) (emphasis added). But here, Covington does not aver that he made a report regarding the possible identity theft to a consumer reporting agency maintaining a file with his information, triggering the prevention procedures outlined in the statute.

Even if this Court were to liberally construe Covington's complaint to be asserting a claim under 15 U.S.C. § 1681e(b) or § 1681i(a), two other common claims under the FCRA, Covington fails to state a cognizable claim. "Under section 1681e(b) of the FCRA, a [consumer reporting agency], when preparing a credit report on a consumer, is required to 'follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.'" Ketsenburg v. ChexSystems, Inc., No. 4:21-CV-220, 2022 WL 407136, at *2 (E.D. Mo. Feb. 10, 2022) (quoting 15 U.S.C. § 1681e(b)). "If a consumer brings a

---

[1] 15 U.S.C. § 1681a(p) defines a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis as:

> a consumer reporting agency that regularly engages in the practice of assembling or evaluating, and maintaining, for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:
> (1) Public record information.
> (2) Credit account information from persons who furnish that information regularly and in the ordinary course of business.

dispute to the [consumer reporting agency] regarding the completeness or accuracy of a credit report, the [consumer reporting agency] is required by section 1681i(a) 'within a reasonable period of time [to] reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant.'" Id. (final alteration in original) (quoting 15 U.S.C. § 1681i(a)).

> A plaintiff asserting a claim for relief under 15 U.S.C. § 1681e(b) must allege that:
>
> (1) the credit reporting agency failed to follow reasonable procedures intended to assure the accuracy of its reports; (2) the credit reporting agency reported inaccurate credit information about [him]; (3) the plaintiff suffered harm; and (4) the plaintiff's harm was caused by the credit reporting agency's failure to follow reasonable procedures.

Huie v. Trans Union LLC, No. 25-CV-3885, 2026 WL 281454, at *2 (D. Minn. Jan. 22, 2026) (citing Paul v. Experian Info. Sols., Inc., 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011)). Here, Covington does not allege that a credit reporting agency failed to follow reasonable procedures. See generally Doc. 1. Under 15 U.S.C. § 1681i(a),

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with [15 U.S.C. § 1681i(a)(5)], before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1). Here again, however, Covington avers no facts that he notified any agency of incorrect information or that he is attempting to assert a claim against such an agency for failure to investigate. See generally Doc. 1.

Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). A court

is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. Id. Covington's claims are against fictitious individuals named as defendants, something the FCRA does not contemplate or embrace. Therefore, his claims under the FCRA are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).[2]

Covington also alleges that he brings claims for "identity theft-related fraud[.]" Doc. 1 at 1. Although Covington does not cite to a specific statute, this Court liberally construes his claim for "identity theft-related fraud" as a claim under 18 U.S.C. § 1028, a criminal statute regarding fraud and identity theft. To the extent that Covington is attempting to bring a claim pursuant to this criminal statute, he may not do so, and his claims are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).[3] See, e.g., Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 190 (1994) (stating that federal criminal statutes generally do not provide private rights of action).

---

[2] Additionally, it is not clear whether the applicable statute of limitations has run on Covington's FCRA claims. Under the FCRA, "[a]n action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than . . . 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability[.]" 15 U.S.C. § 1681p(1). Covington attaches to his complaint various screenshots of credit reports, and one such credit report, from TransUnion, is dated August 28, 2023, which would suggest that Covington became aware of this alleged violation more than two years before he brought the current suit, which was filed on April 29, 2026. See Doc. 1-1 at 11.

[3] Covington states that Annette Dawson, the 50% owner of the Covington-Bey LLC, engaged in "intentional nondisclosure" and "fraudulent maintenance" of the LLC, which Convington alleges evidences an "illegal intent." Doc. 1 at 4. But Covington does not name Dawson or Covington-Bey LLC as defendants, and whether personal jurisdiction in South Dakota over this North Carolina LLC exists is unclear. Doc. 1 at 1, 4.

8

### III.    Motion for Temporary Restraining Order

Covington filed a motion for a temporary restraining order, requesting an "emergency assett [sic] freeze on all bank accounts and titles associated with the John Doe defendants and fictitious aliases listed in the Complaint." Doc. 5. Rule 65(b) allows this Court to issue a temporary restraining order without notice if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice." Fed. R. Civ. P. 65(b). "A temporary restraining order under Rule 65(b) is to prevent immediate and irreparable harm and typically to preserve the status quo until the Court can hear from both sides." Inst. for Free Speech v. Jackley, 340 F. Supp. 3d 853, 858 (D.S.D. 2018). However, as Covington's claims are all dismissed, the motion for a temporary restraining order, Doc. 5, is denied.

In this same motion, Covington requests that his case be filed under seal. Doc. 5 at 2. Because a "common-law right to access judicial records is generally recognized throughout the country[,]" a party attempting to file under seal must demonstrate a compelling reason to do so. Borella v. Black Hills Surgical Hosp. L.L.P., No. 5:24-CV-05079, 2025 WL 1928074, at *2 (D.S.D. July 14, 2025). Here, Covington provides no reason why his complaint should be filed under seal, see generally Doc. 5, and his request that his case be filed under seal is denied.

Covington also requests "[e]xpedited discovery to subpoena bank records, IP addresses, and FEIN data to unmask the true identities of the John Does." Doc. 5 at 2. Because Covington's claims are all dismissed, this request is denied as moot.

9

## IV.    Motion to Appoint Counsel

Covington has also filed a motion to appoint counsel.  Doc. 3.  Because Covington's claims are all dismissed, the motion to appoint counsel, Doc. 3, is denied as moot.

## V.    Conclusion

Accordingly, it is

ORDERED that Covington's motion to proceed in forma pauperis, Doc. 2, is granted.  It is further

ORDERED that Covington's claims under the FCRA are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

ORDERED that any claims Covington attempts to assert under 18 U.S.C. § 1028 are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).  It is further

ORDERED that the motion for a temporary restraining order, Doc. 5, is denied.  It is finally

ORDERED that Covington's motion to appoint counsel, Doc. 3, is denied as moot.

DATED May 5ᵗʰ, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

10